Nelson, Ch. J. dissenting.
The present writ of habeas corpus is the fifth that has been issued by different courts and officers in this state, at the instance of the relator, for the purpose of testing the question whether he is entitled to the custody of his infant daughter, Mary Mercein Barry. The third writ resulted in an adjudication by Judge Inglis that the order of the chancellor upon the habeas corpus granted by him, was a valid and conclusive bar to the re-hearing of all matters then or previously existing, and which might have been litigated in that proceeding. Judge Inglis’ decision was finally reviewed in the court for the correction of errors, where it was affirmed ; and this has narrowed very much the range of investigation in respect to the present case.
The fourth writ was issued by this court during the general term in October, 1840, and was made returnable before Judge Oakley, of the superior court of the city of New-York, pursuant to the statute of 1837. (Sess. Laws of 1837, p. 230.) The writ was discharged upon the 1st of March, 1841; the learned judge holding, that the child in question was not im properly detained, and directing, moreover, that it should remain in the custody of its mother. This adjudication has not been appealed from, and, of course, concludes the parties as to the matters in controversy, at least down to the time of the issuing of the writ, (Mercein v. The People ex rel. Barry, 25 Wen. 64.) Our only proper enquiry, therefore is, whether any new' circumstances have occurred since that period which have es *424 gentially varied the case. If not, the same judgment then given, should be pronounced by us.
So far as respects the unhappy differences that have sprung up between the relator and his wife, and which have existed for the last three or four years without abatement or approach to reconciliation, no change can be said to have taken place since Judge Oakley’s decision, except perhaps an increased manifestation of alienated feelings and sentiments. I speak now simply of the fact; not intending to express an opinion upon the merits of the controversy one way or the other. These differences have been spread with painful circumstantiality (I do not say unnecessarily) before each of the four tribunals which have heretofore taken cognizance of the case j and they have failed to command a determination in favor of the relator. Nor have the personal character or circumstances in life of either of these parents materially changed since the hearing before Judge Oakley. The mother is, for aught I see, as competent and well qualified now, to have the care and nurture of the child, as she was then; and the relator is in no better condition. The case, moreover, does not disclose any present or prospective advantages likely to accrue to the child from the proposed change of custody, beyond those heretofore, exhibited and urged on the side of the relator. The only new features ascribed to the case as now presented, or wrhich can with any sort of plausibility be deemed to have varied its legal aspect, are those mainly relied on in argument by the learned counsel for the relator; viz. the advanced age of the child, and its alleged improvement in point of health and constitution. The condition of the child in these respects has always entered more or less into the consideration of the several tribunals before whom the case has undergone investigation ; and doubtless, in the exercise of a sound judicial discretion in controversies relating to the custody of infants, such circumstances ought to have their due share of influence. As to the child’s health, however, it appears from the return, and the fact is not particularly denied or questioned by the relator, *425 that no material alteration has taken place; especially none more favorable or encouraging. It is stated by the mother,that the same reasons for her continued care and nurture of the child still exist in as great force as at the former hearing; and that it has suffered from six several attacks of dangerous illness since that period. The whole question, therefore, as it seems’ to me, turns upon the effect due to the circumstance that a year and six months has been added to the former age of the child.
When the parties were before this court on certiorari, we entertained a different opinion from that pronounced by Judge Inglis and the other officers who have severally passed upon this case. (25 Wend. 72,83.) Our opinion, we then believed, was in accordance with the well considered and well settled principles of the common law as understood and acted upon in this state for a series of years. We supposed that, in yielding assent to these principles, we were acting with a just and becoming regard to the relation of husband and wife ; and not only so, but in subserviency, also, to the permanent interests of society. Much of the elevated tone of public and private morality which exists in a community, and much of its refinement, prosperity and hanpiness, must ever depend upon the sacredness with which the marriage vow is regarded, and the inviolability of the rights and duties resulting from it. I do not believe that the general doctrine on this subject was intended to be impugned, much less overruled, in the opinions delivered in the court for the correction of errors. On the contrary, the determination of that court should, I think, be regarded as maintaining only that the facts and circumstances' then disclosed, were not such as to call for judicial interposition in the relator’s behalf; and that the case therefore fell within some of the exceptions to the general rule. They differed from us in the application of the law.
Be this as it may, however, it is quite certain that the facts and circumstances which appeared before Judge Oakley, and which were by him held insufficient' to entitle the relator to the custody of his child,' should' be so regarded by us also; *426 that decision, while unreversed, being conclusive upon the parties and subject matter. I am of opinion that the case has not been materially varied on the present occasion. The circumstance of a year and a half having been added to the age of the child since the former hearing, seems to me too unimportant to afford ground for changing the legal judgment of a court. It appears affirmatively, moreover, that the personal care and nurture of the mother were as necessary to the well being of the child at the period of the former hearing, as they are now. The subject matter therefore remains essentially the same; and if so, the same result should .follow. My brethren, however, have arrived at a different conclusion, and an order must therefore be entered that the child be delivered to the relator
Ordered accordingly.